**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Selisha Govan, | No. CV-21-00045-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Shannon Selisha Govan's Application for Social Security Supplemental Security Income and Disability Insurance by the Social Security Administration ("SSA"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 17, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 18, "Def. Br."), and Plaintiff filed a Reply Brief (Doc. 19, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 14, "R.") and now affirms the decision of the Administrative Law Judge ("ALJ").

**I.   BACKGROUND**

Plaintiff applied for Social Security Supplemental Security Income and Disability Insurance for the second time on October 23, 2017. (R. at 96–108, 248–60.) The Commissioner denied Plaintiff's second application initially and again upon reconsideration. (R. at 17–41, 163–67.) Plaintiff appeared before the ALJ for a hearing regarding her claim in April 2020. (R. at 42–68.) On July 1, 2020, the ALJ issued a decision denying Plaintiff's claim. (R. at 17–41.) Plaintiff appealed and, on November 17,

2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–6.) Plaintiff now seeks judicial review of that decision pursuant to 45 U.S.C. § 405(g).

The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's testimony, and the testimony of a vocational expert. (R. at 42–68.) Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: lumbar degenerative disc disease, scoliosis, carpal tunnel syndrome, right knee osteoarthritis, obesity, and mood disorder. (R. at 24.) At step three of the five-step sequential evaluation, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 25.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except the [Plaintiff] can lift and carry 10 pounds occasionally and frequently, stand and walk for 4 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. The [Plaintiff] cannot push or pull with the bilateral lower extremities. She can never climb ladders, ropes or scaffolds. The [Plaintiff] can never kneel, crouch or crawl. The [Plaintiff] can frequently handle with both upper extremities. The [Plaintiff] can follow simple instructions for unskilled work.

(R. at 27.) Accordingly, at step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including the representative occupations of addressing clerk, toy stuffer, and document preparer. (R. at 33, 34.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal quotation marks omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted). "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "Even when the ALJ commits legal error, [the court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citation and quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses

the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues the ALJ erred in rejecting the medical opinions of her treating physician assistant, Jonathan Navarro, P.A.-C., and primary care physician, Ronald Miller, M.D. (Pl. Br. at 17–21.) Second, Plaintiff argues that the ALJ erred in rejecting Plaintiff's symptom testimony. (Pl. Br. at 10–17.)

#### A. Medical Opinions

Plaintiff argues that the ALJ improperly rejected the medical opinion of "PA Navarro and Dr. Miller without specific and legitimate reasons . . . when the agency's vocational expert concluded these providers' limitations would preclude the ability to sustain work." (Pl. Br. at 1–2.) In response, Defendant argues that the "specific and legitimate" standard did not survive the March 2017 regulation changes and was, accordingly, not required to provide specific and legitimate reasons in rejecting PA Navarro's and Dr. Miller's medical opinion. (Def. Br. at 19.)  Additionally, Defendant argues the ALJ properly considered the supportability and consistency of PA Navarro's and Dr. Miller's medical opinion in making its ultimate decision to reject it. (Def. Br. at 19–20.)

Previously, the Ninth Circuit recognized a hierarchy among the sources of medical opinions. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Those who treated a claimant were treating physicians, those who examined but did not treat the claimant were examining physicians, and those who neither examined nor treated the claimant were non-examining physicians. *Id.* This hierarchy was known as the treating physician rule, which

generally afforded greater weight to the opinions of treating physicians than the opinions of non-treating physicians. *Orn*, 495 F.3d at 632. Under the rule, where the treating physician's opinion was not contradicted by another doctor, it could be rejected by the agency only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Where, on the other hand, the treating doctor's opinion was contradicted by another doctor, the agency was required to articulate "specific and legitimate reasons," based on substantial evidence, for rejecting the opinion. *Id.*

In March 2017, the SSA amended its regulations to, among other things, abrogate the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852–57 (Jan. 18, 2017); *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-08317, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020). The new regulations apply to claims, like Plaintiff's, that were filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c.

The new regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ will consider all medical opinions according to several factors: whether the opinion is supported by objective medical evidence, whether it is consistent with the evidence from other sources, and the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization. *Alonzo v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1000024, at *3 (citing *Jackson v. Saul*, No. CV 18-4374, 2019 WL 4058997, at *10 (E.D. Pa. Aug. 27, 2019)).

The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The supportability factor focuses on evidence intrinsic to the medical opinion; it requires the adjudicator to look at the objective medical evidence cited and explanations provided by the medical source as support for his or her medical opinion. "The more relevant the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . , the more persuasive the

medical opinions . . . will be." *Id.* § 404.1520c(c)(1). The consistency factor, on the other hand, looks to evidence extrinsic to the medical opinion. On that factor, the adjudicator compares the opinion to the other evidence in the record. "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

The Ninth Circuit has made clear that the "specific and legitimate" standard for disregarding treating physicians' opinions does not apply to claims filed after March 17, 2017. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Nevertheless, the ALJ must still provide an explanation, supported by substantial evidence, of why she disregarded a treating physician's opinion. *Id.*

PA Navarro and Dr. Miller examined and treated Plaintiff. (R. at 1137–85, 1196–1200, 1221–22, 1230–31, 1245–87, 1617–60, 1882–1902.)[*] In January 2020, PA Navarro and Dr. Miller collectively indicated, on a check-the-box form, that Plaintiff could sit for less than two hours, stand/walk for less than two hours, carry less than ten pounds, and lift less than ten pounds during an eight-hour workday. (R. at 1817, 1826.) They further opined that Plaintiff could use both her hands and bend, reach, and stoop less than occasionally in an eight-hour day. (R. at 1817, 1826.) They also indicated Plaintiff's medical impairments caused cognitive and pace limitations and gave her headaches or mental fatigue two to three times a month. (R. at 1818, 1827.) Given these observations, they ultimately concluded Plaintiff would miss four to five days a month due to her medical condition. (R. at 1818, 1827.)

The ALJ found PA Navarro's and Dr. Miller's opinion unpersuasive because (1) they did not provide "specific explanations to support their opinions" and (2) "their opinions were inconsistent with the medical evidence." (R. at 32.) Specifically, the ALJ stated that while Plaintiff had "degenerative lumbar issues, scoliosis, right knee

---

[*]Defendant argues Navarro and Miller both indicated on a form that they did not provide treatment or supervise treatment of Plaintiff. (Def. Br. at 14.) While this is true (*see* R. at 1818, 1827), this was clearly a clerical error, as the medical record demonstrates that both Navarro and Miller treated Plaintiff on multiple occasions. (R. at 1137–85, 1196–1200, 1221–22, 1230–31, 1245–87, 1617–60, 1882–1902; Reply at 3–4).

osteoarthritis, carpal tunnel and was obese," the medical evidence was inconsistent because it showed she "had a full range of motion in her lumbar region, no motor issues, no weakness in her lower extremities and a normal gait." (R. at 32.)  Similarly, the ALJ found the cognitive and pace opinions inconsistent because Plaintiff "had normal attention, good concentration, and was alert and oriented in multiple examinations." (R. at 32.)

Plaintiff advances two arguments for how the ALJ erred in rejecting Navarro and Miller's opinion. Neither are availing. First, Plaintiff argues the ALJ erred in rejecting Navarro and Miller's medical opinion on the basis that they did not provide "specific explanations to support their opinions." (Pl. Br. at 18.) Plaintiff argues that even if the physicians provided their medical opinion in a check-the-box form with no explanations, "an ALJ is still not free to reject an assessment on that basis." (Pl. Br. at 19.) That is not the case, however. "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, 'the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.'" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). That was the case here. (R. at 1817–18, 1827–27.) Moreover, the ALJ cited to various specific medical records in the administrative record. (R. at 351–52, 603, 629, 691, 1189, 1235, 1298, 1353, 1367, 1369, 1389–90, 1403, 1412–13, 1503, 1514, 1541, 1555, 1687, 1698, 1792, 1839, 1847, 1854, 1878.) "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)). These reasons were sufficient for the ALJ to reject Navarro and Miller's medical opinion.

The ALJ also decided to discredit Navarro and Miller's opinion because it was "inconsistent with the medical evidence." (R. at 32.) The ALJ explained that while Plaintiff had "degenerative lumbar issues, scoliosis, right knee osteoarthritis, carpal tunnel and was obese," Plaintiff still maintained "full range of motion in her lumbar region, no

motor issues, no weakness in her lower extremities and a normal gait." (R. at 32.) Based on these findings, the ALJ concluded that Navarro and Miller's opinion that Plaintiff was unable to work was contradicted by the objective evidence. This was a reasonable conclusion.

Second, Plaintiff argues the ALJ used findings that did not support the agency's decision and, therefore, did not adequately articulate the supportability or consistency of the assessments. (Pl. Br. at 20–21.) But the ALJ's findings did support the agency's decision, specifically, the RFC calculation. The ALJ stated that the opinion of State Agency medical consultants Yosef Schwartz M.D. and Alicia V. Blando M.D. was "generally supported by their explanation that the claimant had lumbar issues, presumptive carpal tunnel syndrome and was obese but also had some generally normal physical examinations." (R. at 31.) Then, the ALJ asserted Dr. Schwartz's and Dr. Blando's opinion was "generally consistent with the medical evidence" because "the record showed that the claimant had degenerative lumbar issues, scoliosis, right knee osteoarthritis, carpal tunnel and was obese but also had no weakness in her lower extremities, full range of motion in her lumbar region, no motor issues, and a normal gait." (R. at 31.) These opinions and supported the ALJ's RFC, and the ALJ did not err in assessing a higher RFC than what Navarro and Miller evaluated. (R. at 32.)

In contrast, the ALJ stated Navarro and Miller's medical opinion was neither supported nor consistent with the medical evidence at multiple points. The ALJ did not find Navarro and Miller's check-the-box form to "support their opinions" as it was "inconsistent with the medical evidence" because they opined Plaintiff "had degenerative lumbar issues, scoliosis, right knee osteoarthritis, carpal tunnel and was obese" but also that Plaintiff "had full range of motion in her lumbar region, no motor issues, no weakness in her lower extremities and a normal gait." (R. at 32.) The ALJ further found Navarro and Miller's cognitive and pace opinions "inconsistent with the medical evidence that showed the claimant had normal attention, good concentration, and was alert and oriented in multiple examinations." (R. at 32.) As a result, the ALJ favored the opinions of Dr.

Schwartz and Dr. Blando who took into consideration Plaintiff's holistic abilities. (R. at 31.) Accordingly, the ALJ sufficiently articulated the supportability and consistency of the assessments.

### B. Symptom Testimony

Plaintiff contends the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 10–17.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3).

At step one of the test, the ALJ found that the medical evidence reflects the presence of lumbar degenerative disc disease, scoliosis, carpal tunnel syndrome, right knee osteoarthritis, obesity, and mood disorder. (R. at 24.) The ALJ recognized Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," such as back pain, knee pain, and wrist pain. (R. at 28.) At step two, however, the ALJ determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. (R. at 28.) The Plaintiff argues that the ALJ "rejected [Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons" because the ALJ made a general reference to Plaintiff's "alleged symptoms" and failed to "tie-in his general characterization of the medical record with any particular symptom testimony." (Pl. Br. at 10, 11, 12.)

The ALJ referred on numerous occasions to Plaintiff's allegations of back, knee, and wrist pain. (R. at 26, 30.) The ALJ noted the record showed multiple examinations where Plaintiff had a full range of motion in the lumbar region, did not experience motor issues or disturbances, had normal or adequate sensation, had normal extremities during visual overviews, and had a normal gait. (R. at 28–29.) The Court finds this specificity satisfies the standard set forth in 42 U.S.C. § 423(d)(5)(A). *See Holohan*, 246 F.3d at 1208.

Moreover, the ALJ properly discounted Plaintiff's symptom testimony. (R. at 28–29.) Regarding Plaintiff's alleged back pain, the ALJ cited to medical records that indicated Plaintiff did not experience motor issues or disturbances, had normal and/or adequate sensation, had normal extremities during visual overviews, and had normal gait. (R. at 29.) Regarding Plaintiff's alleged knee pain, the ALJ cited to medical records that showed Plaintiff had full range of motion, did not have lower extremity weakness, and had normal extremities during visual overview. (R. at 29.) Regarding Plaintiff's alleged wrist pain, the ALJ cited to medical records that showed Plaintiff had normal range of motion in her hands, did not experience motor issues or disturbances, and had normal and/or adequate sensation. (R. at 29.) Additionally, Plaintiff testified that her pain medication and various procedures allowed her to experience symptom relief and that she experiences no side effects from the

medication. (R. at 60, 61.) The effectiveness of medication is a relevant factor in considering symptoms, such as pain. 20 C.F.R. § 416.929(c)(2)(iv).

Because the ALJ offered specific conclusions on why Plaintiff's testimony was not credible, the ALJ properly discounted Plaintiff's symptom testimony. "Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ properly assessed Plaintiff's pain and the Court finds no error.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** affirming the July 1, 2020 decision of the Administrative Law Judge (R. at 20–35), as upheld by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close the case.

Dated this 5th day of August, 2022.

Michael T. Liburdi
United States District Judge